1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| LANIEKA N. WISE, | ) | 1:11-cv-00690-SKO |
| | ) | |
| | ) | **ORDER REGARDING PLAINTIFF'S** |
| Plaintiff, | ) | **SOCIAL SECURITY COMPLAINT** |
| | ) | |
| v. | ) | (Doc. 1) |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

## BACKGROUND

     Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for Supplemental Security Income ("SSI") pursuant to Title XVI of the Social Security Act (the "Act").  42 U.S.C. §§ 405(g); 1383(c)(3).  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge.  (Docs. 9, 10.) .  *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; *see also* L.R. 301, 305.

1          **FACTUAL BACKGROUND**

2    **A.     Procedural Background**

3          Plaintiff was born in 1981, has a high school education, and previously worked in a

4    warehouse packing clothing, shoes, or breaking down boxes; Plaintiff also worked for several years

5    as a cook in a fast food restaurant.  (Administrative Record ("AR") 28, 37, 104, 123.)  On December

6    20, 2001, Plaintiff filed an application for SSI alleging disability since March 9, 2000, due to

7    depression and paranoia.  (AR 10.)  Plaintiff's claim was denied initially and on reconsideration;

8    subsequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  A hearing

9    was held and a decision was issued on April 4, 2003, denying the claim.  (AR 10.)  Plaintiff filed a

10   request for review by the Appeals Council, which was granted, and the case was remanded for

11   further proceedings.  (AR 10.)

12         A supplemental hearing was held on December 9, 2004, and a new decision was issued on

13   January 13, 2005, denying Plaintiff's claim at the Second Step of the sequential analysis.  (AR 10,

14   55-67.)  That decision was not appealed.  (AR 10.)

15         On March 31, 2008, Plaintiff filed another application for SSI, which is the application

16   currently on appeal, alleging disability beginning July 1, 2007.  (AR 123-29.)

17   **B.     Relevant Medical Evidence**

18         On June 8, 2007, Plaintiff was evaluated by a social worker, M. Heffron.  (AR 246.)  Plaintiff

19   reported she was afraid to leave the house and she complained of a depressed mood.  (AR 248.)  The

20   progress note indicates that Plaintiff had not received any treatment since 2003.  (AR 248.)  A

21   diagnosis of schizophrenia was provided, and a Global Assessment of Function ("GAF") score was

22   listed as 32.  (AR 246.)[2]

23

24

25         [2] According to the American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders*,
26   ("DSM-IV), a GAF score is the clinician's judgment of the individual's overall level of functioning.  It is rated with
     respect only to psychological, social, and occupational functioning, without regard to impairments in functioning due
27   to physical or environmental limitations.  *See* DSM-IV, at 32.  A GAF score in the range of 31 to 40 indicates some
     impairment in reality testing or communication, or major impairment in several areas, such as work or school, family
28   relations, judgment, thinking, or mood.  DSM-IV at 34.

On November 7, 2007, a mental status examination was conducted by Kevin Marmolejo, M.D., a psychiatrist. (AR 241.) Dr. Marmolejo diagnosed Plaintiff as "psychotic NOS [not otherwise specified]" and noted that schizophrenia paranoid type versus schizoaffective disorder needed to be considered. (AR 241.) Dr. Marmolejo noted that Plaintiff was "fairly groomed," and had normal cognition, speech, thought content, and orientation. (AR 241.) Dr. Marmolejo indicated that Plaintiff's insight and judgment were "normal," although her affective range was constricted. (AR 241.) Dr. Marmolejo prescribed psychotropic medication to address symptoms and recommended face-to-face meetings with Plaintiff to monitor symptoms as well as case management or psychotherapy as needed. (AR 243.) Plaintiff did not appear for a follow-up visit with Dr. Marmolejo in January 2008, cancelled her appointment in March 2008, and did not appear for a scheduled appointment in June 2008. (AR 234-35, 260-62.)

On June 4, 2008, the claimant was examined by John Champlin, M.D., a psychiatrist. (AR 259.) Dr. Champlin noted that Plaintiff was well groomed and cooperative; she had normal cognition, orientation, and thought content. (AR 259.) Plaintiff's mood was noted as depressed, her affective range was "constricted," her intelligence was "average," but her insight and judgment were impaired. (AR 259.) Dr. Champlin diagnosed Plaintiff with schizoaffective disorder, and noted that Plaintiff had financial difficulties. (AR 259.) Dr. Champlin assigned Plaintiff a GAF score of 45, but did not increase Plaintiff's prescription mediation and recommended that she continue with her therapy.

On July 3, 2008, Plaintiff was seen by Dr. Champlin again. (AR 257.) He assigned Plaintiff a GAF score of 45, noting that Plaintiff's mood was depressed and her affective range was restricted. (AR 257.) He increased Plaintiff's prescription for Abilify, reduced her prescription for Prozac, and recommended that Plaintiff's other medications remain the same. (AR 257.) Plaintiff missed two follow-up appointments with Dr. Champlin on July 18, and July 22, 2008. (AR 255-56.) Plaintiff consulted with Dr. Champlin on July 23, 2008, and indicated that she had not been sleeping well, felt paranoid around white people, and felt that she was being followed by someone who wanted to hurt her. (AR 254.) She denied suicidal or homicidal intentions. (AR 254.) Dr. Champlin noted Plaintiff was well groomed, alert, and had normal speech, cognition, and orientation. (AR 254.) Dr.

3

1  Champlin recommended that Plaintiff's current medications remain unchanged, but prescribed
2  Haldol, Cogentin, and Klonopin.  (AR 254.)

3        On July 12, 2008, Plaintiff was examined by agency consultative physician, Ekram Michiel,
4  M.D.  (AR 249-52.)  Plaintiff reported that she gets paranoid around people and that she hears
5  voices.  (AR 249.)  Plaintiff reported that she was able to take care of her personal hygiene, but
6  indicated that she does not do anything else by herself.  (AR 250.)  Dr. Michiel noted that Plaintiff
7  was "fairly groomed" with adequate personal hygiene.  (AR 250.)  Dr. Michiel also indicated that
8  Plaintiff was a "fairly good historian," but he noted that her conduct during the hearing did not
9  conform to her claim of hearing voices all the time and being paranoid around people. (AR 249-50.)
10 Dr. Michiel diagnosed Plaintiff with psychotic disorder, NOS, and assigned Plaintiff a GAF score
11 of 55 to 60.  (AR 251.)  He opined that Plaintiff would be able to maintain attention and
12 concentration and would be able to carry out simple job instructions.  (AR 251.)

13       Plaintiff's next appeared for a follow-up examination on April 17, 2009. (AR 342.) Dr. Jorge
14 A. Urbina, M.D., a psychiatrist, examined Plaintiff.  (AR 342.)  Dr. Urbina noted that Plaintiff was
15 well groomed, cooperative, and her cognition, speech, and orientation were normal.  (AR 342.)
16 Plaintiff's mood was noted as depressed, her affective range was restricted, but her insight and
17 judgment were found to be normal.  (AR 342)  Plaintiff denied any suicidal or homicidal ideation,
18 and Dr. Urbina diagnosed Plaintiff with schizophrenia, paranoid type.  (AR 342.)  On June 10,
19 2009,social worker, Cathy Leyva, noted that Plaintiff had missed her follow-up appointment with
20 Dr. Urbina, and that Plaintiff missed additional appointments with Dr. Urbina on May 13 and 22,
21 2009. (AR 339-40.)  On July 2, 2009, Plaintiff reported to Ms. Leyva that she was doing "ok" with
22 her medications, but continued to suffer depression.  (AR 339.)

23       On January 4, 2010, Plaintiff was seen by a social worker in the Fresno County Department
24 of Behavioral Health, Arrie Smith, who noted that Plaintiff had acceptable hygiene and grooming,
25 displayed a "cooperative attitude," and denied having present thoughts of harming herself or others.
26 (AR 334.)  On January 5, 2010, Plaintiff was examined by Luyen Luu, M.D., who reported that
27 Plaintiff had significant impairment and a probability of significant deterioration.  (AR 332.)
28 Plaintiff reported that she felt sad and heard voices.  (AR 330.)  Plaintiff indicated that the voices

4

1   talked to her, that nobody liked her, and that it was better for her to kill herself.  (AR 330.)  She said

2   she had previously tried to overdose on pills, and that she slit her wrist, but did not go to the hospital.

3   (AR 330.)  Dr. Luu assigned Plaintiff a GAF score of 60.  (AR 330.)  Plaintiff missed her follow-up

4   appointment with Dr. Luu on March 16, 2010.  (AR 324.)

5          On March 29, 2010, Plaintiff was seen for a follow-up appointment with Wen L. Chu, M.D.

6   (AR 323.)  Dr. Chu reported that Plaintiff had a long psychiatric history, she was hospitalized for

7   psychiatric symptoms several times in the past, with her last hospitalization in 2005.  (AR 323.)

8   Plaintiff's mother reported fewer crises because Plaintiff was more compliant with her medication.

9   (AR 323.)  Dr. Chu noted that Plaintiff was well groomed and had normal mood, affective range, and

10  insight and judgment.  (AR 323.)  Dr. Chu prescribed Abilify and Prozac.  (AR 323.)

11  **C.    Administrative Proceedings**

12          On June 15, 2010, ALJ Teresa L. Hoskins Hart held a hearing where Plaintiff, who was

13  represented by counsel, testified.  (AR 27-51.)  According to Plaintiff, in a usual day she wakes up

14  around 10:00 a.m. and may watch some television.  (AR 35.)  However, too much television causes

15  Plaintiff to hear voices, so she will turn it off at times.  (AR 35.)  Plaintiff stated that she really does

16  not go outside because she is scared and because she does not "like to be bothered or surrounded by

17  too many people at once."  (AR 35.)  As a result, she mostly stays in the house.  (AR 35.)  Plaintiff

18  does leave the house to go to doctors' appointments, but her mother usually goes with her because

19  Plaintiff does not like being by herself.  (AR 35.)  Plaintiff indicated that she has no friends or

20  hobbies and she does not get along with people because she is always afraid that they are going to

21  do something to her or they are after her.  (AR 36.)  Plaintiff reported that she hears a lot of voices,

22  and sometimes sees things that are not there.  (AR 36.)  As her medication makes her sleepy, "a lot

23  of times [jobs] will require [her] to do stuff that [she] really [cannot] do because of the medication."

24  (AR 36.)

25          Plaintiff testified that she constantly hears voices, but her medication helps to lessen the

26  voices.  (AR 37.)  She feels depressed and experiences anxiety, particularly around too many people.

27  (AR 38.)  She cries about 80 percent of the time at home.  (AR 39.)  She has suicidal thoughts 60

28  percent of the time and had tried to hurt herself in the past.  (AR 39.)  She had tried to hurt herself

a couple of days before the hearing by taking pills, but her mother stopped her; neither she nor her mother called the doctor. (AR 40.) Her mother selects her clothing because Plaintiff does not do "a good job at it," and if it were up to Plaintiff she would "just wear pajamas all day" and would not get dressed. (AR 40.) She continues to have a difficult time concentrating, but could not estimate how long she is able to concentrate. (AR 41.) Plaintiff goes grocery shopping with her mother to pick out things to eat. She does not talk to family, only to her mother, and there were no relatives she enjoys being around. (AR 43.)[3]

On August 27, 2010, the ALJ issued a decision, finding Plaintiff not disabled since March 31, 2008, the date Plaintiff's SSI application was filed. (AR 10-18.) Specifically, the ALJ found that Plaintiff (1) had not engaged in substantial gainful activity since the alleged onset date of March 31, 2008; (2) has a medically determinable impairment of schizoaffective disorder, controlled with compliant medication; but (3) does not have an impairment or combination of impairments that has significantly limited Plaintiff's ability to perform basic work-related activities. The ALJ concluded that Plaintiff does not have a severe impairment or combination of impairments, and was not disabled. (AR 18.) Plaintiff sought review of the ALJ's decision with the Appeals Council, which was denied on March 3, 2011. (AR 3-5.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 416.1481.

On April 27, 2011, Plaintiff filed a complaint before this Court seeking review of the ALJ's decision. Plaintiff argues that the ALJ failed to provide legally sufficient reasons to find Plaintiff "not fully credible."

## SCOPE OF REVIEW

The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999). In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). Instead, the Court must

---

[3] Although a Vocational Expert testified, Plaintiff is only challenging the ALJ's credibility determination, and the VE testimony is not relevant to the ALJ's disability determination. Thus, a summary of the VE's testimony is not provided.

1    determine whether the Commissioner applied the proper legal standards and whether substantial

2    evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d

3    909, 911 (9th Cir. 2007).

4         "Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v.*

5    *Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).   "Substantial evidence" means "such

6    relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

7    *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*,

8    305 U.S. 197, 229 (1938)).   The Court "must consider the entire record as a whole, weighing both

9    the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and

10   may not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v.*

11   *Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted).

12                                      **APPLICABLE LAW**

13        An individual is considered disabled for purposes of disability benefits if he is unable to

14   engage in any substantial, gainful activity by reason of any medically determinable physical or

15   mental impairment that can be expected to result in death or that has lasted, or can be expected to

16   last, for a continuous period of not less than twelve months.   42 U.S.C. §§ 423(d)(1)(A),

17   1382c(a)(3)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003).   The impairment or

18   impairments must result from anatomical, physiological, or psychological abnormalities that are

19   demonstrable by medically accepted clinical and laboratory diagnostic techniques and must be of

20   such severity that the claimant is not only unable to do his previous work, but cannot, considering

21   his age, education, and work experience, engage in any other kind of substantial, gainful work that

22   exists in the national economy.   42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

23        The regulations provide that the ALJ must undertake a specific five-step sequential analysis

24   in the process of evaluating a disability.   In the First Step, the ALJ must determine whether the

25   claimant is currently engaged in substantial gainful activity.   20 C.F.R. §§ 404.1520(b), 416.920(b).

26   If not, in the Second Step, the ALJ must determine whether the claimant has a severe impairment

27   or a combination of impairments significantly limiting her from performing basic work activities.

28   *Id.* §§ 404.1520(c), 416.920(c).   If so, in the Third Step, the ALJ must determine whether the

claimant has a severe impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. 404, Subpart P, App. 1. *Id.* §§ 404.1520(d), 416.920(d). If not, in the Fourth Step, the ALJ must determine whether the claimant has sufficient residual functional capacity despite the impairment or various limitations to perform her past work. *Id.* §§ 404.1520(f), 416.920(f). If not, in the Fifth Step, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* §§ 404.1520(g), 416.920(g). If a claimant is found to be disabled or not disabled at any step in the sequence, there is no need to consider subsequent steps. *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. §§ 404.1520, 416.920.

## DISCUSSION

Plaintiff asserts that the ALJ erred in assessing her credibility. (Doc. 14.) Specifically, Plaintiff contends that the ALJ erred by rejecting her testimony as unsupported by the objective medical evidence. (Doc. 14, 7:5-8:21.) Plaintiff argues that rejecting a claimant's testimony based on a lack of objective evidence "is always legally insufficient." (Doc. 14, 7:9-10.) Plaintiff also argues that, in considering Plaintiff's daily activities, the ALJ failed to discuss how Plaintiff's activities relate to her ability to perform gainful work activity over a 40-hour workweek, which was error. (Doc. 14, 8:22-10:25.)

The Commissioner maintains that the ALJ adequately considered Plaintiff's credibility, and found Plaintiff less than fully credible due to several inconsistencies between Plaintiff's statements about her limitations and her conduct. (Doc. 18, 8-25.)

### A.    The Second Step Evaluation

At the Second Step of the sequential evaluation process, an ALJ must determine whether a claimant suffers from a "severe" impairment. The regulations define a non-severe impairment as one that does not significantly limit the claimant's ability to do basic work activities. An impairment is not severe "if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'" *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). To establish that an impairment is severe, a claimant must prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings;

the claimant's own statements of symptoms will not suffice.  20 C.F.R. § 416.929.  The effects of all symptoms must be evaluated on the basis of a medically determinable impairment which can be shown to be the cause of the symptoms.  20 C.F.R. § 416.929.  If aggressively applied, the Second Step's severity requirement violates the statute by denying benefits to claimants who do not meet the statutory definition of disabled.  *Corrao v. Shalala*, 20 F.3d 943, 949 (9th Cir. 1994).

A claimant's credibility may be a factor considered at the Second Step if a claimant's allegations regarding symptoms conflict significantly with the medical evidence.  *See Webb v. Barnhart*, 433 F.3d 683, 688 (9th Cir. 2005).  As explained in 20 C.F.R. § 416.929(c),

> [w]hen the medical signs or laboratory findings show that you have a medically determinable impairment(s) that could reasonably be expected to produce your symptoms, such as pain, we must then evaluate the intensity and persistence of your symptoms so that we can determine how your symptoms limiting your capacity for work . . . In evaluating the intensity and persistence of your symptoms, we consider all of the available evidence including your history, the signs and laboratory findings, and statements from you, your treating or nontreating source, or other person about how your symptoms affect you.

In evaluating the credibility of a claimant's testimony regarding subjective pain and symptoms, an ALJ must engage in a two-step analysis.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged.  *Id.*  The claimant is not required to show that her impairment "could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom."  *Id.* (quoting *Lingenfelter*, 504 F.3d at 1036).  If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if he gives "specific, clear and convincing reasons" for the rejection.  *Id.*  As the Ninth Circuit has explained:

> The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.  If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

9

1  *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (citations and internal quotation marks

2  omitted); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226-27 (9th Cir. 2009);

3  20 C.F.R. §§ 404.1529, 416.929.  Other factors the ALJ may consider include a claimant's work

4  record and testimony from physicians and third parties concerning the nature, severity, and effect of

5  the symptoms of which he complains. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

6  **B.    Analysis**

7       Here, the ALJ determined that Plaintiff had a medically determinable impairment, i.e.,

8  schizoaffective disorder, that could reasonably be expected to produce the alleged symptoms;

9  however, the ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting

10  effects of her symptoms not fully credible due to "inconsistency." (AR 14, 17.) The ALJ discussed

11  the relevant medical evidence, Plaintiff's testimony, and testimony from Plaintiff's mother, and

12  determined that Plaintiff had no more than mild restriction in activities of daily living, social

13  functioning, concentration, persistence or pace, and no episodes of decompensation for an extended

14  duration. (AR 18.)  As a result, the ALJ concluded that Plaintiff's mental impairment was not severe

15  at the Second Step of the sequential evaluation.  (AR 18.)

16       Plaintiff does not dispute the ALJ's treatment of the medical evidence.  Instead, Plaintiff

17  asserts that the ALJ discredited Plaintiff's lay statements without providing legally sufficient reasons.

18  The ALJ provided the following reasons for finding Plaintiff "not fully credible":

19       As for the claimant's credibility, the undersigned finds the claimant not fully credible.
       First, the severity of the claimant's alleged symptoms are not in the relevant treatment
20       records.  (Exhibit 1F, 3F, 9F, and 10F).  If the claimant was so suicidal as she
       alleged, one would reasonably assume a responsible psychiatrist would have
21       hospitalized her for treatment.   Second, the claimant made an issue of her
       inappropriate dressing (Testimony).  However, at the hearing, the claimant appeared
22       quite well groomed with long, artificial nails, which is inconsistent with her
       allegations of withdrawal.  In addition, the claimant stated she is scared to go out and
23       thus does not go outside (Exhibit 4E/4).  However, the claimant's mother stated that
       the claimant goes shopping twice a month, 5 hours at a time and that the claimant
24       visits relatives and church (Exhibit 3E/4-5).  Therefore, the undersigned finds the
       claimant not fully credible due to inconsistency.

25

26  (AR 17.)

27       Plaintiff asserts the ALJ discounted Plaintiff's testimony because it lacked support of

28  objective medical evidence. Plaintiff argues that "rejection of a claimant's testimony based on a lack

1    of objective evidence is always legally insufficient." (Doc. 14, 7:9-10.) The ALJ provided an

2    extensive summary of the medical findings, which Plaintiff does not dispute. The ALJ found that

3    the degree of the symptoms alleged by Plaintiff are not supported by the records, and provided a

4    specific example. The ALJ noted that Plaintiff testified that she was suicidal (AR 39), but none of

5    the psychiatrists who evaluated Plaintiff during the relevant period determined that Plaintiff was at

6    risk of harming herself. The ALJ reasoned that a reasonable physician would have hospitalized a

7    patient whom that physician feared to be at risk of suicide. (AR 17.) Indeed, the medical evidence

8    demonstrates that Plaintiff repeatedly informed doctors that she had no suicidal or homicidal

9    ideation. (AR 238, 241 (reported suicidal ideation, but has no plan or intent to harm self), 254, 257.)

10   Further, no doctor recommended that Plaintiff be hospitalized as a risk to herself, or indicated that

11   she was a risk to herself. The lack of medical evidence to corroborate Plaintiff's testimony in this

12   regard may be a reason to discredit a claimant's testimony, so long as it is not the sole reason for

13   doing so. *See Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004); *Morgan v. Comm'r of Soc. Sec.*

14   *Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). Here, not only was there an absence of objective medical

15   evidence to corroborate Plaintiff's asserted suicidal intentions, the medical professionals employed

16   to assess Plaintiff's emotional state never deemed Plaintiff at risk of harming herself. Thus,

17   Plaintiff's testimony that she thinks of committing suicide 60 percent of the time appeared to the ALJ

18   to be an exaggeration in light of the fact that none of the treating doctors perceived such a threat.

19   This was a rational basis to reject Plaintiff's statements regarding suicidal intentions.

20          The ALJ also considered several of Plaintiff's statements that appeared to conflict with

21   Plaintiff's conduct. The ALJ noted that Plaintiff testified that she had an issue with inappropriate

22   dressing (AR 40) as result of her mental impairment, but Plaintiff appeared well groomed at the

23   hearing and had long, artificial nails, which the ALJ found inconsistent with Plaintiff's statements

24   of withdrawal. (AR 17.) Further, although Plaintiff testified that she did not go outside because she

25   is scared (AR 176), Plaintiff's mother testified that Plaintiff goes shopping twice a month and she

26   visits relatives and attends church. (AR 17.)

27          An ALJ is permitted to make specific observations of the claimant at the hearing as part of

28   an overall credibility determination. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

1  The ALJ's rejection of Plaintiff's statements about her inability to appropriately dress and groom

2  herself is rational in light of Plaintiff's observed, relevant conduct.  Moreover, substantial evidence

3  in the record supports the ALJ's finding that Plaintiff's statement about dressing and grooming

4  herself was inconsistent.  The doctors and social workers who examined and interacted with Plaintiff

5  uniformly noted that Plaintiff was appropriately dressed and groomed.  (AR 241, 259, 254, 250, 342,

6  334.)  Where the evidence is subject to more than one rational interpretation, a court may not

7  substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Morgan*, 169 F.3d

8  at 599 (9th Cir. 1999); *Green v. Heckler*, 803 F.2d 528, 532 (9th Cir. 1986) (stating that ALJ's

9  credibility determinations are entitled to great deference).

10  The ALJ also found Plaintiff's statement that she does not go outside to be an exaggeration

11  in light of the fact that Plaintiff's mother testified that Plaintiff goes shopping twice a month for five

12  hours at a time and visits relatives and goes to church on occasion.  (*See* AR 168-69.)  This, too, is

13  an appropriate credibility consideration.  *Light*, 119 F.3d at 792 (in weighing Plaintiff's credibility,

14  an ALJ may consider "inconsistencies either in [the claimant's] testimony or between [the claimant's]

15  testimony and [her] conduct"); *Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999)

16  (inconsistencies between claimant's testimony and actions cited as clear and convincing reasons for

17  rejecting claimant's testimony).

18  To the extent that Plaintiff contends the ALJ rejected her testimony on the basis of her daily

19  activities, the argument is not persuasive.  The ALJ's credibility discussion did not relate to how

20  Plaintiff's daily activities were inconsistent with her ability to perform work related tasks; instead,

21  the examples elucidated by the ALJ were specific instances of conduct that appeared to the ALJ to

22  be inconsistent with how Plaintiff described her symptoms and limitations.  Taken in total, the ALJ

23  provided clear and convincing reasons to find Plaintiff "not fully credible."

## CONCLUSION

25  After consideration of the Plaintiff's and Defendant's briefs and a thorough review of the

26  record, the Court finds that the ALJ's decision is supported by substantial evidence in the record as

27  a whole and is based on proper legal standards.  Accordingly, the Court DENIES Plaintiff's appeal

28  from the administrative decision of the Commissioner of Social Security.  The Clerk of this Court

is DIRECTED to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security, and against Plaintiff LANIEKA N. WISE.

IT IS SO ORDERED.

**Dated:**   **September 17, 2012**              /s/ **Sheila K. Oberto**
                                    UNITED STATES MAGISTRATE JUDGE